J-S02010-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDRE ALONZO WEEKS | : | |
| | : | |
| Appellant | : | No. 1007 MDA 2022 |

Appeal from the Judgment of Sentence Entered January 12, 2022
In the Court of Common Pleas of Franklin County
Criminal Division at No(s):  CP-28-CR-0001343-2019

BEFORE:  PANELLA, P.J., OLSON, J., and DUBOW, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED JUNE 08, 2023**

Andre Alonzo Weeks has brought this appeal from the judgment of sentence stemming from charges that he caused Derek Schultz's overdose death by selling Schultz heroin. Upon careful review, we remand and relinquish jurisdiction for a Pa.R.Crim.P. 600 hearing to address Weeks's claim his right to a prompt trial was violated. On all other issues raised by Weeks, we affirm the judgment of sentence.

The charges against Weeks were based primarily on the testimony of Ashton Carbaugh as corroborated by other evidence. Carbaugh testified that on November 3, 2018, Schultz contacted him seeking to obtain heroin, and Carbaugh arranged a drug deal with Weeks. Carbaugh then picked up Schultz, and they drove to meet Weeks. Carbaugh met with Weeks, purchased the heroin, split the heroin with Schultz, and then returned Schultz to his home.

Later that day, Schultz's body was discovered by his fiancée, Danielle Trace-Baylor. She also observed the presence of drug paraphernalia, which indicated recent drug use. In addition, Trace-Baylor noticed a text message on Schultz's cell phone from Carbaugh. Schultz's death was ruled an accidental drug overdose, and toxicology reports found heroin and fentanyl in Schultz's system.

Trooper Lindsey Trace of the Pennsylvania State Police was the criminal investigator assigned to the case, and, at approximately 5:00 p.m. on the day of the incident, she phoned Carbaugh to inform him that Schultz had died. Subsequently, the contents of Schultz's cell phone were accessed and reflected activity between Schultz and Carbaugh indicating that, prior to Schultz's death, the two men had planned to obtain heroin.

Shortly after Schultz's death Trooper Trace spoke with the State Parole Agency, who informed her that Weeks had violated his parole due to drug possession, and the Agency had possession of Weeks's cell phone. On January 17, 2020, Trooper Trace obtained a search warrant to secure information from the phone. The search of Weeks's cell phone revealed text messages between Weeks and Carbaugh. The search produced additional text conversations between Weeks and others, which reflected that Weeks had a knowledge of drug dealing.

On August 9, 2019, Weeks was charged with one count each of manufacture, delivery, or possession with intent to deliver a controlled

substance ("PWID"), drug delivery resulting in death, and involuntary manslaughter. Multiple continuances occurred, several of which were related to the Covid-19 pandemic. Weeks's trial commenced on November 18, 2021, and on November 23, 2021, a jury found him guilty of all charges. On January 12, 2022, the trial court sentenced Weeks to serve an aggregate term of incarceration of fifteen to thirty years. Weeks filed a timely post-sentence motion, which the trial court denied. This timely appeal followed.

Weeks presents the following eight issues for our review, which we have renumbered for purposes of disposition:

1. Was the jury's verdict against the sufficiency of the evidence?

2. Was [Weeks] wrongly tried before the [c]ourt in that the [c]ourt did not have jurisdiction to try [Weeks] due to violations of [Week's] "right to a speedy trial?"

3. Did the [c]ourt err in denying [Weeks's] request for a continuance of his case where [Weeks] was denied access to his attorney at a vital stage of trial preparation?

4. Did the [c]ourt err by allowing into evidence items that were improperly and illegally obtained?

5. Did the court err, and thus deny [Weeks] a fair trial, by improvidently allowing testimony and evidence as to prior bad acts of [Weeks]?

6. Was [Weeks] denied a fair trial in that the [prosecuting] [a]ttorney made statements to the jury and elicited testimony from witnesses as to matters that were unduly prejudicial to [Weeks]?

7. Was the jury's verdict against the weight of the evidence?

8. Did the [c]ourt improperly and illegally sentence [Weeks]?

Appellant's Brief at 4-5 (renumbered).

We address Weeks's challenge to the sufficiency of the evidence first because he would be entitled to discharge if the evidence was insufficient to support the verdict. *See Commonwealth v. Toritto*, 67 A.3d 29, 33 (Pa. Super. 2013) (stating "Because a successful sufficiency of the evidence claim warrants discharge on the pertinent crime, we must address this issue first").

First, Weeks presents a bald argument that "the jury's verdict was against the sufficiency of the evidence." *See* Appellant's Brief at 48-49. When challenging the sufficiency of the evidence on appeal, an appellant must specify the element or elements upon which the evidence was insufficient in order to preserve the issue for appeal. *See Commonwealth v. Williams*, 959 A.2d 1252, 1257-1258 (Pa. Super. 2008) (finding waiver of sufficiency of evidence claim where the appellant failed to specify in Rule 1925(b) Statement the elements of particular crime not proven by the Commonwealth). *See also Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009) (finding sufficiency claim waived under *Williams* for failure to specify either in Rule 1925(b) statement or in argument portion of appellate brief which elements of crimes were not proven beyond a reasonable doubt).

Here, Weeks failed to specify in his appellate brief exactly which crimes he is challenging under this claim.[1] Moreover, Weeks failed to indicate in his

_____

[1] In presenting this claim in his appellate brief, he offers the following:

*(Footnote Continued Next Page)*

Rule 1925(b) statement or in his appellate brief which elements, of any of the crimes he was convicted of, were allegedly not established. Consequently, his non-specific claim challenging the sufficiency of the evidence, which fails to specify which elements of which crimes were allegedly not proven by the Commonwealth, is waived.[2]

Next, Weeks argues that the trial court erred in denying his motion to dismiss charges pursuant to Pennsylvania Rule of Criminal Procedure 600. *See* Appellant's Brief at 10-17. Weeks avers that he was deprived of his right to a prompt trial. Essentially, he contends that the trial court erred in denying his pre-trial motions to dismiss for failure to commence his trial within 365 days from the date on which his criminal complaint was filed.

_____

Weeks refers this Court to the same factual concerns raised on pages 39 to 47 of this brief [(addressing the weight of the evidence)], in support of his claim. Weeks suggests that same strongly implies that the evidence "and all reasonable inferences derived therefrom (even when) viewed in favor of the Commonwealth as verdict winner" did not support a finding of all of the elements of the alleged offense beyond a reasonable doubt." [sic] *Commonwealth v. Parker*, 641 Pa. 39, 168 A.3d 161 (2018).

Appellant's Brief at 49.

[2] We note that, had we not found Weeks's challenge to the sufficiency of the evidence waived for the reasons stated above, and addressed the issue that the Commonwealth failed to present sufficient evidence to support his convictions, we would have affirmed on the basis of the trial court opinion which addressed the sufficiency of the evidence to support the convictions. *See* Trial Court Opinion, 8/25/22, at 11-18.

Generally, Rule 600 provides that "[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). However, "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1).

"In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth." ***Commonwealth v. Bethea***, 185 A.3d 364, 370 (Pa. Super. 2018) (citation omitted).

"When reviewing a trial court's decision in a Rule 600 case, an appellate court will reverse only if the trial court abused its discretion." ***Commonwealth v. Bradford***, 46 A.3d 693, 700 (Pa. 2012). We recognize that the courts of this Commonwealth employ a three-step analysis to determine whether Rule 600 requires dismissal of the charges against a defendant:

> The first step in determining whether a technical violation of Rule 600 […] has occurred is to calculate the "mechanical run date."

- 6 -

The mechanical run date is the date by which trial must commence under the relevant procedural rule. [T]he mechanical run date is ascertained by counting the number of days from the triggering event - e.g., the date on which … the criminal complaint was filed – to the date on which trial must commence under Rule [600]. Pa.R.Crim.P. [600(A)(2)(a)].

*Commonwealth v. Preston*, 904 A.2d 1, 11 (Pa. Super. 2006) (internal citations omitted).

In the second step, we must "determine whether any excludable time exists pursuant to Rule 600(C)." **Commonwealth v. Ramos**, 936 A.2d 1097, 1103 (Pa. Super. 2007). Time is excluded from the calculation, thereby extending the Commonwealth's deadline, when there is a delay caused by "circumstances beyond the Commonwealth's control and despite its due diligence[.]" *Commonwealth v. Herring*, 271 A.3d 911, 916 (Pa. Super. 2022) (citations omitted). We assess whether the Commonwealth exercised due diligence in a fact specific manner and recognize that due diligence does not require perfect vigilance or punctilious care. *See id.* Rather, we merely seek to determine whether the Commonwealth "put forth a reasonable effort." *Id.* However, the Commonwealth is required to exercise due diligence throughout the life of the case, and no time may be excluded until the Commonwealth has proved it acted with due diligence with respect to that time. *See id.*

In the third step, "[w]e add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date." *Ramos*, 936 A.2d at 1103. Any time prior to trial, a defendant may move the trial court for

dismissal of the charges if the Commonwealth has violated the Rule. **See** Pa.R.Crim.P. 600(D)(1).

On appeal, Weeks contends that the trial court erred in its Rule 600 calculations. Specifically, Weeks makes the following bald allegation:

> [T]he [c]ourt erroneously refers to the filing of charges on June 20, 2019, and thereafter compounds its error by stating that mathematically three hundred sixty-five (365) days expired/passed on June 19, 2020. If the [c]ourt had used the proper date for initiation of its review, November 3, 2018, 229 days earlier than used by the [c]ourt, the [c]ourt's logically would have set the date for application of the 365 day as November 3, 2019.

Appellant's Brief at 13 (verbatim). And again,

> What can not be ignored is that had the [c]ourt used the proper date to start its calculations, 229 days earlier than the [c]ourt used, the date the [c]ourt would have come up with for determining the expiration for a timely trial would have been December 13, 2020.

**Id**. at 14 (verbatim).

Our review of the record reveals that the trial court did, in fact, use the correct date to initiate its Rule 600 calculations. Weeks claims that the calculation should begin on November 3, 2018, the day of the incident. He alleges that this was the date he was charged and detained in connection with Schultz's death. **See** Appellant's Brief at 10. However, Weeks has failed to properly interpret his history with the criminal justice system.

The record reflects that Weeks was not charged in this matter until June 20, 2019. **See** Criminal Complaint, 6/20/19. While he was incarcerated prior to that date, it was not in connection with Schultz's death. Instead, he was

incarcerated after he violated the conditions of his parole in an unrelated case.[3] ***See*** Search Warrant Affidavit of Probable Cause, 1/17/20, at 2. Accordingly, the trial court properly utilized June 20, 2019, the date the criminal complaint was filed in this case, as the start date for calculating the mechanical run date. Weeks's challenge in this regard fails.

However, Weeks has presented additional challenges to the trial court's decision to deny his motion to dismiss, which compels us to continue our review of this issue. As Weeks observes in his appellate brief, in its order of March 22, 2021, the trial court calculated Weeks's Rule 600 adjusted run date for trial to be July 26, 2021. ***See*** Appellant's Brief at 14. Moreover, in its Rule 1925(b) opinion, the trial court explained that when it initially addressed Weeks's pretrial Rule 600 motion, it made the following factual determinations: 171 days were excludable due to Weeks's continuance requests, and 231 days were excludable based on judicial emergency orders

_____

[3] We note that on January 28, 2021, Weeks filed his first Rule 600 motion stating he was charged on November 3, 2018. ***See*** Motion, 1/28/21, at 1. However, on February 4, 2021, Weeks replaced the original Rule 600 motion with an amended motion acknowledging that he was charged by written complaint filed on June 20, 2019. ***See*** Motion, 2/4/21, at 1. Likewise, in his Rule 600 motion filed on October 18, 2021, Weeks again acknowledged that he was charged by written complaint filed on June 20, 2019. ***See*** Motion, 10/18/21, at 1. For Weeks to now assert that "the [trial c]ourt erroneously refers to the filing of charges on June 20, 2019," is disingenuous and contrary to his own pleadings.

for a total of 402 excludable days.[4] When 402 days is added to the mechanical run date of June 20, 2020, the adjusted run date became July 26, 2021. Having reviewed the record in light of the arguments presented in Weeks's appellate brief, we find no abuse of discretion.

However, Weeks properly points out that his trial commenced on November 18, 2021, which was 115 days after the adjusted run date of July 26, 2021. **See** Appellant's Brief at 14. As we have stated, "If a defendant is not brought to trial by the adjusted run date, the case is dismissed." **Commonwealth v. Lear**, 290 A.3d 709, 2023 PA Super 15, at *21 (Pa. Super. filed February 1, 2023). Weeks complains that the trial court "failed to readdress" Rule 600 at the time of jury selection. **See** Appellant's Brief at 15. We are constrained to agree.

To properly raise a Rule 600 violation, a defendant must file a "written motion requesting that the charges be dismissed" due to a violation of Rule 600. Pa.R.Crim.P. 600(D)(1). Such a motion may be filed "at any time before trial." **Id**. Moreover, when, at any time prior to trial, the trial court has been presented with a written motion requesting that the charges be dismissed with prejudice on the ground that Rule 600 has been violated, "[t]he judge shall conduct a hearing on the motion." Pa.R.Crim.P. 600(D).

---

[4] To the extent that Weeks takes umbrage with the trial court's calculations and minor mathematical errors, **see** Appellant's Brief at 13, we note that any miscalculations were to his benefit.

Again, we reiterate that the Commonwealth is required to exercise due diligence throughout the life of the case, and no time may be excluded until the Commonwealth has proved it acted with due diligence with respect to that time. *See Herring*, 271 A.3d at 916. This is congruent with our Supreme Court's instruction that the "language [of Rule 600 (C)(1)] expressly calls upon a trial court to assess the Commonwealth's due diligence throughout the life of a case, when faced with a claim that the Commonwealth violated a defendant's speedy trial rights." *Commonwealth v. Harth*, 252 A.3d 600, 617 (Pa. 2021). Quite plainly, "the Commonwealth is required to demonstrate that it acted with due diligence during a time period before that period can be deemed excludable." *Id*. *See also Lear*, at *25 (stating that for such "judicial delay to be excluded from the Rule 600(C) computation, the trial court must find that the Commonwealth exercised due diligence"). The assessment of whether the Commonwealth exercised due diligence is performed in a fact specific manner. *See Herring*, 271 A.3d at 916. In *Lear*, we concluded that because the trial court did not afford the Commonwealth the opportunity to prove its diligence, a remand for a hearing under Rule 600(D) was required. *See Lear*, at *25.

Our review reflects that the trial court, in its disposition of Weeks's final Rule 600 motion, failed to address whether the Commonwealth demonstrated it acted with due diligence.

As mentioned previously, on October 18, 2021, Weeks filed an additional written motion for dismissal pursuant to Rule 600. On October 27, 2021, the Commonwealth filed a minimal answer to the motion. However, as acknowledged by the trial court, "the [c]ourt did not issue a decision at jury selection regarding the Rule 600 issue." Trial Court Opinion, 8/25/22, at 20. Rather, the trial court stated that it "determined, based on the litany of [Weeks's] motion, excludable time applied." *Id*.

In its Rule 1925(a) opinion, the trial court set forth a list totaling 167 additional days of delay it attributed to Weeks, which it then added to the previously determined adjusted run date of July 26, 2021. *See id*. at 20-21. The trial court then opined that Weeks's Rule 600 rights had not been violated: "Based on this [c]ourt's calculations, Rule 600 time would have expired on January 9, 2022. The Commonwealth did not act in bad faith and brought [Weeks] to trial in a timely fashion. Therefore, [Weeks's] Rule 600 claim has no merit." *Id*. at 21 (emphasis omitted).

Accordingly, it is undisputed that the trial court failed to hold a hearing on the motion as required under Rule 600(D). Further, while the court concluded the Commonwealth had not acted in bad faith, this is not the same as a finding that the Commonwealth exercised due diligence. The trial court made no finding regarding whether the Commonwealth established the necessary due diligence as intended under Rule 600(C)(1). Consequently, it is our determination that, pursuant to the disposition in *Lear*, a remand for a

hearing is required to "afford the Commonwealth the opportunity to prove its diligence." *Lear*, at *25.

Specifically, we remand for a hearing under Rule 600(D). If the trial court determines the Commonwealth failed to meet its burden to prove due diligence, then the trial court should vacate the sentences and convictions, dismiss the charges, and discharge Weeks. If the trial court determines the Commonwealth exercised due diligence, then it should deny Week's motion to dismiss. Weeks's judgment of sentence would remain, and then Weeks may appeal the Rule 600 determination. Accordingly, in the interests of judicial economy, we will review the remaining issues presently before us.

In his next distinct issue, Weeks argues that he was denied his right to consult with counsel at a critical stage prior to trial, and, therefore, the trial court improperly denied his request for a continuance that he presented on the day of jury selection. *See* Appellant's Brief at 20-24. Weeks alleges that a continuance was necessary because he was denied access to counsel on the eve of jury selection, after he had been transported to the Franklin County Jail and jail officials did not permit defense counsel to meet with Weeks. Weeks posits that "[a] continuance should have been granted so that access could have occurred." *Id*. at 24.

> The decision of whether to grant or deny a request for a continuance is within the sound discretion of the trial judge. *Commonwealth v. Chambers*, 546 Pa. 370, 387, 685 A.2d 96, 104 (1996). In this context, our Supreme Court has defined "abuse of discretion" as follows:

An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record, discretion is abused.

*Id*. The refusal to grant a continuance constitutes reversible error only if "prejudice or a palpable and manifest abuse of discretion is demonstrated." *Commonwealth v. Griffin*, 804 A.2d 1, 12 (Pa. Super. 2002).

*Commonwealth v. Pries*, 861 A.2d 951, 953 (Pa. Super. 2004).

To demonstrate prejudice, the appellant "must be able to show specifically in what manner he was unable to prepare his defense or how he would have prepared differently had he been given more time." *Commonwealth v. Ross*, 57 A.3d 85, 91 (Pa. Super. 2012) (citation omitted). Moreover, "we have consistently stated, an abuse of discretion is not merely an error [of] judgment." *Commonwealth v. Prysock*, 972 A.2d 539, 541 (Pa. Super. 2009) (citation omitted).

In addressing this issue, the trial court noted the following:

Before trial began, the [c]ourt held a hearing to determine if [Weeks's] right to counsel was violated. During this hearing, officials from the prison testified about [Weeks's] transportation. Trial [c]ounsel explained to the court that he arrived at 4:10 p.m. to meet with his client, but the prison [lobby] officer did not allow the meeting. N.T. 11/18/2021, at p.4. [The prison lobby officer,] Officer French[,] testified that when trial counsel arrived at the prison he could not meet with [Weeks]. *Id*. at 11. He testified that his exact words to [t]rial [c]ounsel were, "He is being processed. You will have to wait." *Id*. at 19. Warden Bill Bechtold testified that he and Deputy Warden Weller planned on making accommodations to move [Weeks] into a higher category so he would be processed quicker. *Id*.

- 14 -

Before this could be communicated with Trial Counsel, he served Officer French with a subpoena and left. *Id*. Warden Bechtold testified that [t]rial [c]ounsel was at the jail for approximately 10 or 15 minutes before he left. *Id*. Warden Bechtold testified that typically when an attorney's client is being processed, they can call the prison and an officer could tell them if their client is out of processing. *Id*. at 22. Trial [c]ounsel testified at this hearing that he did not ask the jail how long processing normally takes, did not ask the jail if he could call back, nor did he leave a number for an officer at the jail to call him. *Id*. Trial [c]ounsel recognized that he would be able to confer with [Weeks] prior to picking the jury. *Id*. at 40.

Trial Court Opinion, 8/25/22, at 22-23.

The trial court ultimately reached the following conclusion:

Trial [c]ounsel knew about jury selection for approximately nine months. The jail could not accommodate [t]rial [c]ounsel and allow him to meet with [Weeks] at exactly 4:10 p.m. the night before trial. However, based on the testimony at the hearing and the amount of time Trial Counsel spent on the case, [Weeks] was not denied the right to counsel. He was able to consult with his attorney.

*Id*. at 24. We cannot conclude this reasoning constitutes an abuse of discretion.

Further, Weeks does not specifically show in what manner he was unable to prepare his defense or how he would have prepared differently had he been given more time to do so. Therefore, he has failed to demonstrate the necessary prejudice to establish that the trial court's refusal to grant a continuance constituted reversible error. Accordingly, this issue fails.

Fourth, Weeks argues that the trial court erred in permitting into evidence items that he claims were improperly obtained. *See* Appellant's Brief at 35-36. Specifically, Weeks asserts that evidence derived from the search of

his cell phone was illegally obtained because the search warrant was allegedly obtained based upon false statements included in the affidavit.

Pennsylvania Rule of Appellate Procedure 302(a) provides that "issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Likewise, we have long held that claims not raised before the trial court are waived. *See Commonwealth v. Lopata*, 754 A.2d 685, 689 (Pa. Super. 2000) ("A claim which has not been raised before the trial court cannot be raised for the first time on appeal.").

Pennsylvania Rule of Evidence 103 addresses rulings on evidence and provides, in pertinent part, as follows:

**Rule 103.  Rulings on Evidence**

 **(a) Preserving a Claim of Error.**  A party may claim error in a ruling to admit or exclude evidence only:

(1) if the ruling admits evidence, a party, on the record:

(A) makes a timely objection, motion to strike, or motion *in limine*; and

(B) states the specific ground, unless it was apparent from the context; . . .

Pa.R.E. 103(a)(1).

Pursuant to Pa.R.A.P. 302 and Pa.R.E. 103, our courts have long held that to preserve a challenge to an evidentiary ruling, a party must make a timely and specific objection to the admission or exclusion of the evidence. *See*, *e.g.*, *Commonwealth v. Pacheco*, 227 A.3d 358, 373 (Pa. Super. 2020). A party's failure to make a specific objection deprives the trial court

and the opposing party of the opportunity to either respond to the objection or to alter the course of the questioning accordingly. *See Commonwealth v. Willis*, 552 A.2d 682, 690 (Pa. Super. 1988). Accordingly, the failure of a party to make a timely and specific objection to an evidentiary violation results in a waiver of that ground on appeal.

Here, as noted by the trial court, Weeks neither objected to the admission of the cell phone and its data into evidence, nor did he file a suppression motion. *See* Trial Court Opinion, 8/25/22, at 35. We agree with the trial court's conclusion that the issue was not properly preserved by presenting the claim to the lower court in the first instance. Therefore, this issue is waived.

In his fifth issue, Weeks argues that the trial court erred in admitting testimony and evidence of his prior bad acts. *See* Appellant's Brief at 27-35. Weeks contends that the trial court erred in admitting into evidence, over Weeks's objections, text messages from his cell phone to other individuals, which the Commonwealth characterized as "drug talk." The text messages on Weeks's phone referencing the sale of narcotics for specific amounts of cash reflect an involvement with drug sales prior to the incident leading to Schultz's death. Weeks claims that this evidence did not meet any exception to the prohibition of admission of prior bad acts evidence.

It is well settled that "[t]he admission of evidence is within the sound discretion of the trial court and will be reversed on appeal only upon a showing

that the trial court clearly abused its discretion." ***Commonwealth v. Miles***, 846 A.2d 132, 136 (Pa. Super. 2004) (*en banc*) (citation omitted). Abuse of discretion requires a finding of misapplication of the law, a failure to apply the law, or judgment by the trial court that exhibits bias, ill-will, prejudice, partiality, or was manifestly unreasonable, as reflected by the record. ***See Commonwealth v. Montalvo***, 986 A.2d 84, 94 (Pa. 2009).

Our Supreme Court has discussed evidence of other bad acts and the related exceptions as follows:

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

***Commonwealth v. Sherwood***, 982 A.2d 483, 497 (Pa. 2009).

Rule 404 "deals exclusively with the evidence of crimes, wrongs or acts which a party seeks to admit to prove something about an accused, a complainant or a witness." ***Commonwealth v. Thompson***, 779 A.2d 1195, 1201 (Pa. Super. 2001). Such evidence may be admissible "where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." ***Commonwealth v. Russell***, 938 A.2d 1082, 1092 (Pa. Super. 2007). However, this Court has reiterated that "[w]hile evidence of prior bad acts is not admissible to show criminal propensity,

evidence of other crimes may be admissible if it is relevant to show some other legitimate purpose." ***Commonwealth v. Ivy***, 146 A.3d 241, 251 (Pa. Super. 2016) (citation omitted).

We are also mindful that our Supreme Court observed that a trial court is not "required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." ***Commonwealth v. Paddy***, 800 A.2d 294, 308 (Pa. 2002) (citation omitted). In addition, we note that, with regard to jury instructions, "[t]he law presumes that the jury will follow the instructions of the court." ***Commonwealth v. Brown***, 786 A.2d 961, 971 (Pa. 2001). ***See also Commonwealth v. O'Hannon***, 732 A.2d 1193, 1196 (Pa. 1999) (stating that "[a]bsent evidence to the contrary, the jury is presumed to have followed the trial court's instructions").

The trial court admitted two text messages from Weeks's phone into evidence, and offered the following reasoning:

> In the present case, Exhibits 87 and 90 demonstrate that [Weeks] knew what it means to make a drug transaction and that the drug transactions were happening in and around the neighborhood in which [Schultz] and Mr. Carbaugh bought heroin. Therefore, these text messages logically connected to the criminal charges against [Weeks] and support the Commonwealth's theory that [Weeks] engaged in the sale of narcotics.
>
> This [c]ourt engaged in the appropriate balancing test as it ruled on the admissibility of these exhibits. … The [c]ourt ruled that Exhibits 87 and 90 were admissible to show [Weeks's]

knowledge. The [c]ourt excluded multiple exhibits because they were "more prejudicial than appropriate."

Trial Court Opinion, 8/25/22, at 29-30.

Furthermore, as the trial court aptly notes, limiting instructions were given to the jury related to each of the exhibits in question. The trial court charged the jury as follows:

> As to Commonwealth's Exhibit Number 87, I'm advising you that it is only admissible for the purpose of determining whether or not [Weeks] has knowledge of a drug transaction or of the nature of drug transactions and for no other purpose. It's the only purpose it can be used. … Members of the jury, again, the only purpose for which [Exhibit 90] is admissible and for which you can consider it is to determine [Weeks's] knowledge of drug transaction and for no other purpose.

N.T., 11/22/21, at 87, 91.

We agree that the text messages reflect that Weeks possessed a knowledge of drug dealing, which was relevant to the issue of whether he sold drugs that caused Schultz's death. Accordingly, we discern no error on the part of the trial court in admitting the evidence. Furthermore, there is no evidence that the jury ignored the trial court's cautionary instructions directing the jury to consider the evidence for a limited purpose, and "absent evidence to the contrary, the jury is presumed to have followed the court's instructions." *O'Hannon*, 732 A.2d at 1196. Consequently, Weeks's issue does not merit relief.

Sixth, Weeks argues the trial court erred in failing to grant his motion for mistrial due to prosecutorial misconduct. *See* Appellant's Brief at 25-27.

Specifically, Weeks claims the prosecutor made several improper and prejudicial statements during his opening arguments indicating that Weeks had previously been incarcerated. *See id*. at 25-26. We disagree with Weeks's claim.

"Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion." ***Commonwealth v. Harris***, 884 A.2d 920, 927 (Pa. Super. 2005) (citation omitted). "It is within the discretion of the trial court to determine whether a defendant has been prejudiced by misconduct or impropriety to the extent that a mistrial is warranted." ***Commonwealth v. Baez***, 720 A.2d 711, 729 (Pa. 1998) (citation omitted).

Moreover, when a party moves for a mistrial, such relief is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. ***See Commonwealth v. Feliciano***, 884 A.2d 901, 903 (Pa. Super. 2005). The decision whether to grant a new trial because of alleged prosecutorial misconduct rests within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. ***See Commonwealth v. Rios***, 721 A.2d 1049, 1054 (Pa. 1998). Comments by a prosecutor do not constitute reversible error unless the language was such that its unavoidable effect was to prejudice the jury, forming in their minds fixed bias or hostility towards the defendant, so that

they could not weigh the evidence objectively and render a true verdict. ***See id***.

Our Supreme Court has explained that "although generally no reference may be made at trial in a criminal case to a defendant's arrest or incarceration for a previous crime, there is no rule in Pennsylvania which prohibits reference to a defendant's incarceration awaiting trial or arrest for the crimes charged." ***Commonwealth v. Johnson***, 838 A.2d 663, 680 (Pa. 2003) (citation omitted). The trial court did not abuse its discretion in rejecting the misconduct claim raised here.

Weeks argues that the following comment by the prosecutor during his opening argument regarding Weeks's conduct toward Carbaugh while they were both incarcerated required a mistrial:

> Guess who just happens to come along to the [cell] door? Guess who just happens to start screaming and having all his buddies -- what he -- I will use his term, run up on [Carbaugh]?
>
> And you know what. You're not going to have to take this from [Carbaugh] himself. You're going to hear it from his lips to your ears because boy is he a talker out there on that jail phone and he has some pretty good stuff to say about this case and about what he did to [Carbaugh] and about how he tried to force him and intimidate him under physical threat to change his testimony.

N.T., 11/18/21, at 26.

Weeks also cites the following statement from the prosecutor to support his claim that a mistrial was required:

> One of the other things you're going to hear right from [Weeks's] lips on the calls is about how he had all the discovery in this case and if we offered him the right amount of time he was going to

- 22 -

plead guilty and we'll talk about what that means at the end of the trial.

*Id*. at 29.

These comments were in reference to Weeks's conduct in attempting to intimidate a witness while they were incarcerated and statements to his paramour on the jail phone regarding the fact that he would plead guilty if presented with an appropriate deal. At the conclusion of the prosecutor's opening argument, defense counsel presented two motions for mistrial. ***See id***. at 34.

Upon review, we conclude that the references to Weeks's incarceration were in accordance with the standards set forth by our Supreme Court. The prosecutor's comments were made with the intent to challenge Weeks's credibility and propensity to be truthful. Although alluding to Weeks's incarceration, the prosecutor's comment did not have the unavoidable effect of prejudicing the jury, *i.e*. forming in their minds fixed bias or hostility towards Weeks so that they could not weigh the evidence objectively and render a true verdict. Therefore, the trial court did not abuse its discretion in rejecting the alleged misconduct claim raised here and denying the requested mistrial.

In his seventh issue, Weeks argues that the verdict was against the weight of the evidence. ***See*** Appellant's Brief at 36-48. Basically, Weeks contends that the finder of fact and the trial court have incorrectly balanced the evidence presented and ignored inconsistencies that should have

destroyed various witnesses' credibility. In doing so, Weeks sets forth thirty-three references to the record that he believes bolster his notion that the verdicts of guilt should be overturned. *See* Appellant's Brief at 39-47.

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part or none of the evidence and to determine the credibility of witnesses. ***Commonwealth v. Small***, 741 A.2d 666, 672 (Pa. 1999) (citation omitted). When considering a motion that a verdict was against the weight of the evidence, a "trial court should award a new trial on this ground only when the verdict is so contrary to the evidence as to shock one's sense of justice." ***Commonwealth v. Chamberlain***, 30 A.3d 381, 396 (Pa. 2011) (citation omitted).

This Court's standard of review of a trial court's decision regarding a weight of the evidence claim is limited to determining whether the trial court palpably abused its discretion in concluding that the verdict was or was not against the weight of the evidence. ***See Commonwealth v. Champney***, 832 A.2d 403, 408 (Pa. 2003). "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." ***Commonwealth v. Talbert***, 129 A.3d 536, 546 (Pa. Super. 2015) (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict

was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted)

The jury, sitting as the finder of fact, chose to believe the evidence presented by the Commonwealth and the logical inferences derived therefrom, as was its right. In addressing Week's challenge to the weight of the evidence and the alleged conflicting testimony offered by Trace-Baylor, the trial court stated, "the jury observed Ms. Trace-Baylor's testimony and the testimony of all of the other witnesses throughout the four[-]day trial. The jury observed Ms. Trace-Baylor's demeanor on both direct and cross[-]examination as she testified to her knowledge about [Schultz]. The jury was free to assess her credibility and believe all, part, or none of the evidence presented during her testimony. Ultimately, Ms. Trace-Baylor's testimony was not the only pertinent fact for the jury to decide when determining [whether] the victim died from the use of drugs. This alleged conflict in testimony is not enough to shock the conscious of the court." Trial Court Opinion, 8/25/22, at 10.

Concerning the testimony offered by Carbaugh, the trial court stated that "[t]he jury saw CDR records that verified communication between Mr. Carbaugh and [Weeks]. The jury observed Mr. Carbaugh's direct testimony and observed his demeanor and response to [Weeks's] thorough cross-examination. Ultimately the jury chose to believe Mr. Carbaugh. Reviewing the record, this determination does not shock the conscious of the court.

Therefore, the jury's verdict was not against the weight of the evidence." *Id*. at 11.

It was within the province of the jury as finder of fact to resolve all issues of credibility, resolve any conflicts in evidence, make reasonable inferences from the evidence, believe all, none, or some of the evidence, and ultimately adjudge Weeks guilty. The jury weighed the evidence, credited the Commonwealth's evidence, and concluded Weeks committed the crimes. The trial court did not err in concluding the verdict was not so contrary to the evidence so as to shock one's sense of justice. Accordingly, we conclude that the trial court did not abuse its discretion in determining Weeks's weight of the evidence claim lacks merit.

Last, Weeks argues that the trial court abused its discretion in fashioning his sentence. *See* Appellant's Brief at 17-20. Essentially, Weeks asserts that the trial court should not have sentenced him beyond the aggravated range of the sentencing guidelines.

Our standard of review is one of abuse of discretion. Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. *See* ***Commonwealth v. Shugars***, 895 A.2d 1270, 1275 (Pa. Super. 2006).

It is well settled there is no absolute right to appeal the discretionary aspects of a sentence. ***See Commonwealth v. Hartle***, 894 A.2d 800, 805 (Pa. Super. 2006). Rather, where an appellant challenges the discretionary

aspects of a sentence, the appeal should be considered a petition for allowance of appeal. *See Commonwealth v. W.H.M.*, 932 A.2d 155, 163 (Pa. Super. 2007).

As we observed in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
>> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Moury*, 992 A.2d at 170 (citation and brackets omitted).

The first requirement of the four-part test is met because Weeks timely brought this direct appeal. However, our review of the record reflects Weeks did not meet the second requirement because he did not raise his challenges to the discretionary aspects of his sentence in his post-sentence motion or at the time of sentencing. Specifically, Weeks did not include this issue with his timely filed post-sentence motion,[5] nor did Weeks raise his challenge orally at

_____

[5] In his post-sentence motion, Schultz challenged the weight of the evidence and the sufficiency of the evidence. *See* Post-Sentence Motion, 1/20/22. He did not present a challenge to the sentence.

the sentencing hearing. Therefore, we are constrained to conclude that Weeks's issue is waived, and we are precluded from addressing its merits.

In summary, we have concluded that, the issues presented by Weeks in this direct appeal, except for one, do not afford relief as they are either waived or lack merit. However, because the trial court did not afford the Commonwealth the opportunity to prove its diligence, we remand for a hearing under Rule 600(D). If the trial court determines after the hearing that the Commonwealth failed to meet its burden to show due diligence, then the trial court should vacate the sentences and convictions, dismiss the charges, and discharge Weeks at this docket number. Conversely, if the trial court determines the Commonwealth exercised due diligence, then it should deny Weeks's motion to dismiss; Weeks's judgment of sentence would remain, and Weeks would be afforded the opportunity to appeal the Rule 600 determination.

Case remanded for a hearing pursuant to Pennsylvania Rule of Criminal Procedure 600(D) as instructed. Judgment of sentence affirmed in all other respects. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/08/2023